George Lombardi v. George Lombardi George Lombardi v. George Lombardi Can everybody hear me? Go ahead. Okay. The prison officials working at the Jefferson City Correctional Center, which is under the watchful eye of the Missouri Department of Corrections, are entitled to the defense of qualified immunity as they did not violate any of the plaintiff James Spann's clearly established constitutional rights. The trial court denied qualified immunity in regards to an adjustment board hearing that found that James Spann had sexually assaulted his cellmate. This would have been his second such forcible sexual misconduct violation within the course of a year. This followed an investigation launched by investigator Nick Miller, which compiled evidence including witness statements and a rape kit collected at the University of Missouri Hospital in Columbia, Missouri. Following this investigation, a conduct violation was issued against James Spann, which acted as his notice of the upcoming disciplinary hearing. Following the hearing conducted by Lieutenant Michael Cahalan and Functional Unit Manager Raina Martin, the board found evidence sufficient to find that James Spann had committed a forcible sexual misconduct, a finding that was later sustained by the warden of Jefferson City Correctional Center, Jay Cassidy. For the purpose of this appeal and the purpose of summary judgment before the trial court, the prison officials in this case have conceded all factual averments, have not argued any claim of fact in this case whatsoever, just for those specific purposes. Because even conceding every fact to the plaintiff, we believe that the doctrine of qualified immunity still protects these prison officials from suit. Counsel, what does the record show about how much notice Spann was given as to the time and date of the hearing? The time and date itself was not given in the notice, but the actual allegations that were contained, whether or not who the victim was, the time and place, and the nature of the act was given. And that was roughly – Right. I understand that. But my question is how much advance notice was he given as to the time and date of the hearing? It was roughly two weeks, if I'm doing the math in my head correctly. In fact, I may actually – Is there someplace where we can find that in the record? Yes. That would be on the conduct violation itself and the factual averments as to the date of the hearing. The date of the hearing itself, I believe it's also in the briefings, was it initially convened on July 18th. The conduct violation was issued on July 2nd. And then the hearing was tabled for roughly a week and resumed on July 25th. When you're using jargon, when you say the conduct violation was issued, do you mean notice was provided? Yes, Your Honor. I apologize. The conduct violation acts as the notice. Well, I know. But you're using jargon. And it would be helpful if you could just be clear. The notice was provided on July 2 and the hearing convened on July 18? Yes, Your Honor. All right. Thank you. And like I said, that notice contained the allegations, the name of the victim, the conduct violation at issue, and also outlined various rights allowed to the plaintiff in that conduct violation. It is part of the record on appeal for your review. So what's your argument as to why the district court erred? The district court did not properly apply Hamner v. Burroughs, the case that this court decided in 2019, to the facts of this case in determining that there was a protectable liberty interest at stake here. In Hamner v. Burroughs, which is very factually similar to this case, this court found that an inmate who was placed on administrative segregation without a cellmate under strikingly similar conditions as to what Mr. Spann is alleging here did not allege a protectable liberty interest which would require due process. Counsel, how do you get around Wilkinson v. Austin from the U.S. Supreme Court? We believe that Wilkinson focused on three particular factors. Well, I don't believe this is what Wilkinson says. It focuses on three particular factors in finding whether or not a heightened level of due process was required. Those factors were whether or not there was a severe limitation on human contact and indefinite placement in maximum security, which is only reviewed annually, and that the placement would disqualify an otherwise eligible inmate from parole considerations. And how is that materially different than what we have here? While I will concede that there was a severe limitation on human contact, the placement on administrative segregation was not indefinite with only an annual review, for one. Mr. Spann was entitled to a review for every 90 days. And two. He was kept there six years. Correct. And that was an issue that was decided by the trial court on the actual basis of the meaningful hearings every 90 days. The prison officials were granted qualified immunity on that point. The issue here is the initial movement to administrative segregation as I understand it. Yes, Your Honor. It wasn't known at that time how long he would stay in there. Correct. And there was a separate claim that said there was a violation in the way they did the periodic reviews and that was dismissed. Yes, Your Honor. Okay. So you're saying at the time he was transferred in, it was indefinite but it was subject to more frequent review than the Wilkinson? Yes, Your Honor. I believe by rule. I'm sorry if I cut you off. Go ahead. It was up to 30 to 90 days is my belief on the record that he was given a hearing every 90 days and that was the maximum allowable period by regulation, by prison rules. But was it an indefinite movement, indefinite placement? It was indefinite but he was given much more periodic review. Okay. And disqualification from parole, you're saying he was not disqualified from parole eligibility, he was just delayed because of the conduct violation itself? Somewhat. I think I maybe should explain this one. It's a little bit difficult to parse out very simply. The parole implications in Wilkinson was that there was a requirement to receive parole after a certain amount of time in that was then set aside. There was an entitlement to this parole that was set aside by placement in Ohio's maximum security facilities. That's not present here because there is no entitlement to parole in Missouri. And so he was still eligible for parole. He was denied parole. There was nothing here to affect his eligibility and he also has no independent right to parole in Missouri, which I think differentiates what's happening here from Wilkinson. When you say he was denied parole, do you mean that he was up for some kind of parole hearing while he was in administrative segregation? Yes, he was. I believe he was commonly known as an outdate and that was denied because of this second forcible sexual misconduct. What does it mean to deny an outdate? I don't understand. That sounds like more jargon. Do you mean he would have had a parole hearing and that was canceled? That part is a little, I don't know if he was necessarily entitled to another hearing. I do know that there was a date that he was scheduled to be released based on the parole guidelines, which are advisory. That date was canceled upon the forcible sexual misconduct finding. I see. And then he would have had a new date under the guidelines that would have been sort of presumptive? He would have, the only presumptive date, the only date that is more guaranteed than a parole date would have been his conditional release date. I'm talking about the parole guidelines. You said he had a date under the parole guidelines that was canceled. I believe he would have been eligible for more hearings to determine a new release date. I see. All right. Counsel, I'd like to ask you about the witnesses and Mr. Spann's right to call witnesses and to get an explanation for the denial of that right under Moran v. Ferrier. How is that complied with here? One, if you all do not find that he has met the Wilkinson standard, then the right for the calling of witnesses under Wolf would not necessarily apply. It would be under the Helms standard. But to directly answer your question about the right to witnesses here, witnesses were called in this case. A witness statement was taken from a witness designated by Mr. Spann. There has not been anywhere listed in Wolf v. McDonald a requirement that the witness testify in person. So a statement was taken, and that statement was part of the record for the Adjustment  Committee. So we are accepting his allegations as true for purposes of this proceeding, are we not? And his allegations as to this point are that the witness statement was not considered, not that a witness statement was not taken, which really goes to the weight given to the witness statement. There is no entitlement that a witness statement be given higher weight than any other evidence. And even under Wolf v. McDonald and its progeny, the standard for a finding that a conduct violation occurred is that there is some evidence that the conduct violation occurred, which is a rather low standard of evidence to meet. So with the investigative report, with the witness statements that were taken, with the recordings that were taken, there was more than enough evidence to find that James Spann had sexually assaulted his cellmate. And how do we know the witness statements were taken? The witness statements taken by the investigator were part of his investigative report. The audio recordings were also part of that record. And the witness statement of James Spann witness was included with the disciplinary action report, which acts as kind of a written statement of the evidence relied upon and the findings of the Adjustment Board. Counsel, I'd like to ask you about another topic. Can I just ask one more thing before? Where would we find that in the record, that disciplinary action report that you just described? I believe that it is part of both these, both party summary judgment motions we have both included as exhibits today, so it would be part of the record. I don't have the record citation on hand right now. By the way, your records, you were citing exhibits by letter in your briefs, but the docket has them by number. I don't know if you're aware of that, but you're citing district court docket, some number, exhibit AZ, but the district court lists the dockets by number, so it's very confusing. My apologies. Go ahead, Judge Graz, with your next question. I just wanted to ask you in your remaining time about the reliance on Brown v. Fray for the sufficiency of the written statement. Yes, Your Honor. Why would we rely on Brown v. Fray given the later case of Freitas v. Auger? And as I — so I think the question really comes down to, under Freitas, it seems that you have to have not only a cross-reference to the evidence, but also the reasons. And I've not seen that the reasons were stated in the written statement here. I believe that the issue with Freitas is that there was kind of a special circumstance in there, that there were multiple conduct violations. If I'm remembering this one correctly, that there were multiple conduct violations around the same time, so it was easy to confuse which allegation was being substantiated and that there was more clarity necessary for that. This isn't the case here. There's one incident here that is at issue. And the conduct violation points to what is being considered to make the finding that James Fann has sexually assaulted his cellmate. But there's just a cross-reference in the written statement to a file. Yes. It incorporates the investigative report. So how does that give reasons? Because the investigative report itself outlines every piece of evidence that the investigator found to substantiate a claim that James Fann had sexually assaulted his cellmate, including the statements of the victim, the presence of some physical evidence, including some sort of grease that was found around the victim's anus, and the results of the rape kit. Did you say something earlier about Wolfe where you said if the court were to conclude that there is a liberty interest clearly established, what was your point then about Wolfe? That if the court does not find that there is a protected liberty interest, basically the court doesn't find that Wilkerson applies. Wilkerson basically lays out that if this level is not found, then the proper test would be Hewitt v. Helms or Greenholz. I don't believe Greenholz would apply here, though. You're saying Wolfe v. McDowell doesn't necessarily apply even if there is a liberty interest? Because Greenholz or the other case that you mentioned could be sufficient? Yes, that would be our contention. Your Honor, I have a minute and a half left. I would like to save that for rebuttal. You may. Thank you for your argument. Thank you. Mr. Meyer, we will hear from you. Good morning, Your Honors, and may it please the Court. I'm Anthony Meyer, appearing on behalf of Mr. Spann. With me at counsel's table is appointed counsel, Mr. Brad Lear. Now, I'd like to start backing up with jurisdiction. As to both counts that survive summary judgment, there is no abstract question of law for this court to resolve. The defendants have not met their burden, and there's nothing for the court to review. Under Johnson v. Jones and this court's precedents, including Berry v. Doss, Malik v. The City of Baxter, and Rains v. Counsel and Associates, the court must dismiss for want of interlocutory jurisdiction. Counsel, as I understand it, the government's not challenging any of your allegations. They're accepting them as true. So why wouldn't we have jurisdiction to determine whether the asserted constitutional rights are clearly established? The unanimous decision in Johnson makes clear that a order of this type, which rests qualified immunity determinations based on genuine issues of material effect, deprives the court of jurisdiction. And the court should resolve legal questions. But here, the question, there are merely questions of fact. And Judge Grass, you asked about the issue of notice. And I commend to the court Appendix page 318, where one of Mr. Spann's statements in the summary judgment papers is that he did not receive sufficient notice. And the very first words in the defendant's response is that this fact is disputed. And is your sufficiency argument based on the absence of the time and place in the written notice, or is it as to how much advance notice he was given verbally? I believe verbally, Your Honor. Because I don't think it's clearly established that the time and place has to be in the time for him to prepare defense. The facts are such that we've presented evidence by which a reasonable jury could find that he did not have sufficient notice to prepare his defense. Well, isn't it undisputed that he received the notice two weeks before the hearing? Your Honor, if I may. Well, no. If you don't know, you don't know. We'll look it up. That's what Johnson for the State just recounted these dates. And if those are true, then he had two weeks' notice. I believe there's also an issue with the date. Why does Wolfe v. McDonnell even apply here? Your brief proceeds on the view that if there's a liberty interest, which I know is disputed, that Wolfe v. McDonnell applies. But your main case on liberty interest is Wilkinson v. Austin. And the court in that case went on to say that Wolfe v. McDonnell did not apply and that lesser procedures were sufficient. Your Honor, I would submit that our primary case that a liberty interest applies here is Dibble v. Scholl, a 2007 Eighth Circuit case where it just makes very clear, I'm quoting here, in a prison disciplinary proceeding, and then goes on to enumerate the due process elements and sites. There's a string site and Wolfe is included among those cases. Well, you said that's your main case for whether there's a liberty interest, or that's your main case for . . . Whether due process rights attach here. The question is sort of circular. When do due process rights attach when there's a liberty interest? How do we know whether there's a liberty interest? On Hamner, if I may, an important point here is that the argument that Hamner precludes is the finding of a liberty interest at a major conduct violation adjustment board hearing. That argument has been waived. It was not presented to the trial court. The court here issued a thorough order . . . Now you say that, but they cite Hamner v. Burroughs in their brief, and they say that based on that case, they're entitled to qualified immunity. So how did they waive an argument based on Hamner v. Burroughs? Two responses, Your Honor. First, a CF citation there, I do not . . . I'd submit that that doesn't fully preserve the issue before the trial court. I'd also, secondly, commend to the court . . . The judge clearly knew about it because he granted qualified immunity on other claims based on the case. Yes, Your Honor. I would also point the court to appendix page 142, where the rather than . . . in the summary judgment papers, rather than asserting that there is no liberty interest, the defendants instead proceed to immediately say, well, Wolf is met here. And that's at 142. If you contrast that just two pages later, the defendants do make an argument in their summary judgment papers that there is no liberty interest with respect to the periodic reviews. Now, the waiver argument here is especially important because, as Mr. Jackson alluded to, there are facts that just did not make it into this record as to Mr. Spann's outdate. We even had a stipulation below that his outdate was changed, and that document did not find its way into the record because we believe that argument, that there is no liberty interest at a major conduct violation adjustment board panel, we believe that has been waived. Well, going back to this, I still want to understand your position on why Wolf against McDonnell applies because you emphasize Wilkinson against Austin as your liberty interest case. But as I say, that case then does not apply Wolf against McDonnell. What's your argument for why? Wolf against McDonnell was a case where the inmate lost good time credits and therefore was going to have to serve longer prison time, and therefore there was more procedure required in order to deprive him of that liberty interest in release. Here it's a question of allegedly atypical conditions of confinement, and Wilkinson against Austin said, you know, they did the Matthews against Eldridge balancing and said that certain procedures were required but not the full-blown Wolf procedure. Could you explain further why you think that the full Wolf procedures are required here? More precisely, why that's clearly established? Your Honor, I don't have those cases in front of me, so a close reading, I'm just not able to do that at this point. Okay. Well, I thought Wilkinson was your featured case, so you might have it in mind. But if you don't have it in mind, that's okay. Go ahead with the rest of your argument. In addition, we've cited Clark v. Brewer, a 1985 case from this Court. This may be the case where there's just a robust consensus of case law determining that there is a liberty interest here. I'd also sort of point out that the record contains facts suggesting that the MDOC defendants in their policies actually did comply with Wolf to ensure procedural due process at these proceedings. Obviously, that does not clearly establish the right, but it does provide some evidence of notice. Last, if I may, on the liberty interest, I'd like to just take a moment to frame the argument and sort of step back and see the forest for the trees. The defendants here are contending that there is no liberty interest where an inmate is charged with a major conduct violation, the consequences of which are the most restrictive conditions of confinement. And as your questions alluded to earlier, this was for an indefinite term once that verdict was rendered. Indefinite, subject to 90-day review. You agree with that? I agree with that, yes. But the whole six years is sort of on the table as our position at the outset. That was a potential, yes. Yes. My point is that if there are no liberty interests— But if we said that this man had a liberty interest, then it would apply to someone who went in only for 90 days as well, right? Your Honor, I believe this is a fact-based inquiry, and it's going to be inherently retrospective looking. Here, Mr. Spann was in solitary confinement for over six years. Yes, but you had a separate claim about the six years that was dismissed. So it seems to me here, if we say this man had a liberty interest in whether he was moved into segregation, that would apply regardless of how long a person is in there. I don't see how you could limit it to a person who's in for six years because it's an ex ante consideration at the beginning of the process. You're saying everybody who's moved into administrative segregation in Missouri under this procedure is entitled to the full-blown Wolf v. McDonnell procedures, as I understand it. Is that wrong? Is your argument narrower than that? I would say the opposite, and that's an ex post inquiry, where we're here after the fact and looking at how long that duration of confinement I see. Well, I wonder if you're here on the wrong claim, then. You should be here on the claim that was dismissed about the adequacy of the periodic reviews, but that's not before us, as I understand it. Not before us. We'd preserve the right to appeal later. Yeah, after judgment. Right. The next step for this case, we believe, is a trial for the jury. But going back to my question, do you agree that what the ruling you seek here would apply to any inmate who has moved to segregation even for 90 days? No, Your Honor. I don't. I do not. I believe it would be narrower than that. Okay. How would we narrow it? How would we write it up to be narrower? Hamner, and, of course, this is your opinion, Judge, in Hamner. The durations here, these are two extreme sides of the spectrum. We have seven months on one hand versus over six years on the other. You know, I don't read Hamner as being overly broad, as defendants suggest, and I don't read it as necessarily being overly narrow. But the facts are here that Mr. Spann was in solitary confinement for over six years as a result of this disciplinary proceeding. Thank you. Do you agree that the investigator gathered witness statements, including from Spann? Our contention is that, and this is on page 319 of the appendix, this is in dispute. It's something that the jury must decide. I believe Mr. Jackson's characterization of our summary judgment statement of fact is correct, that those witnesses were not considered. And, you know, part and parcel of that, Mr. Spann, was not provided written reasoning as to the basis of the decision and which witnesses were and were not considered.  Why is it insufficient for the decision to refer to the investigator report? Why is that inadequate? Sort of like a court of appeals saying we affirm for the reasons stated in the government's brief or whatever? Because Mr. Spann is not provided access to that report. So he, you know, it's confidential. And as a matter of prison safety, he's never allowed to see that. Did he request it here? Do you know? I don't know the answer to that. If I may talk briefly about retaliation. Sure, go ahead. Sort of the same, I'm led with that there are genuine disputes of material fact here, precluding summary judgment on qualified immunity. And I believe the record documented in 546 makes clear that there is record evidence demonstrating adverse actions by many of the defendants and all of the defendants here. Do you agree that the medical claims are out because the defendants have been dismissed? Yes, Your Honor. The briefing was confusing because it just refers to defendants in some respects. I mean, it's a complicated case. I understand it. But we've got to sort out individual claims and individual defendants. Do you agree the medical claims are out? Yes. And then you've got claims about cell searches and two or three other. Yes, Your Honor. Page 16 of the order recounts the full list of those retaliatory claims. I see my time has expired. And on the disciplinary report retaliation, you agree that Hartsfield would be the governing legal standard and we have to decide whether this is a some evidence case on that particular allegation? Your Honor, I misspoke a second ago. I said page 16 of the record. It's actually page 21 for the full list of adverse events. Okay. Hartsfield is a sort of different situation where that involves sort of a he said, she said scenario where there's a conduct violation in the inmate's defense as well. That never happened. Here there's independent corroborating evidence, including from the deposition testimony of defendants, supporting Mr. Spann's version of offense. So it's not just that he said, she said, where I think the court is correct to hold that, well, that can't be retaliatory conduct. That's sufficient. Where there's that some evidence, that's sufficient to support a conduct violation. Well, I know your time has expired, but I want to make sure I understand the argument. Are you saying the some evidence standard does not apply here or that it is not satisfied? Not satisfied, Your Honor. Because the evidence is so strong in favor of Spann. Is that your argument? More so that it is disputed. That what that some evidence is, for instance, for one violation, the location of this tobacco. Well, I understand what happened is disputed, but it's not disputed that the prison officials had some evidence that Spann committed the infractions, is it? On the tobacco and the other one about hoarding. There were officers who said, I found the, yeah. That is correct. Okay. I would also, though, offer that even assuming Hartsfield applied it and those conduct violations are kicked, there are other adverse actions for each of those defendants. I understand that, yeah. You've got the cell searches and the other things, but we've got to take them one at a time. So I wanted to understand your position on those. Thank you, Your Honor. To conclude, on behalf of Mr. Spann, I'd ask the Court to dismiss for want of interlocutory jurisdiction and alternatively to affirm the qualified immunity determinations before the Court. Thank you very much. Very well. Thank you for your argument. Mr. Jackson, we'll hear from you in rebuttal. Your Honor, as you all have discussed with opposing counsel, there is not an issue here of jurisdiction. There are no factual issues here for you all to determine between the two sides of this case. We have waived all factual issues and are merely proceeding on the law here. As for plaintiff's contention when it comes to the requirements to place someone in administrative segregation, their inquiry is, as you said, it would require every short term for disciplinary segregation placement to undergo the same process. And this would have a great What do you mean every short term? Is every disciplinary segregation going through the same process that Spann went through at the beginning? Somewhat. There are, you can be placed in disciplinary segregation for a minor or major conduct violation and the procedures for a major or minor conduct violation would be a bit different. What Spann received would have been the procedures outlined for a major conduct violation under prison policy. But for someone who, say, has some contraband in their cell, they would undergo a much lesser process than what offender Spann received in this case. They would still be able to put on their own defense, but it would be Would the consequences be the same in terms of where they are housed? I'm sorry, I'm cutting off again. You know, the argument for liberty interest here and the argument they are making for the procedures is that he would be, the inmate would be placed in this environment that is segregated and eliminates human contact and is in there indefinitely subject to the 90 day reviews. Would that be true of the minor violation people? I think under their argument it would. I just think that that flies in the face of a No, I'm saying would that be true? Is that what happens to someone who is sanctioned for having contraband in the cell? They are allowed to have a process. No, I'm saying if they are found to have committed a violation, would they be placed in the same kind of environment that Spann was placed in? Yes. Yes, I'm sorry. I misunderstood the question. Yes, they would. They would be placed in this isolated environment. They may not be on single cell status. I think maybe that's the differentiation. They may not. They would be placed in administrative segregation, but there are houses in administrative segregation in Jefferson City Correctional Center that do allow for cellmates. They would not necessarily be placed, for instance, in eight house, which is where everyone does not have a cellmate. All right. But there are other people who could be placed in that location for a major violation. Yes. And they wouldn't necessarily be there for six years. They could be there for 90 days and then be released after the first review. Is that possible? That is possible. One thing, and maybe this may help clear things up, is that a long-term assignment to administrative segregation is considered a reclassification and is not considered to be punitive. It is based on securing the safety of the offenders and the staff within the Missouri Department of Corrections. So a disciplinary segregation would be punitive. You do something wrong, you're placed in disciplinary segregation for a usually short-term period of time. But a reclassification to administrative segregation would not be punitive. That would be purely for the safety and security of the inmates within the Department of Corrections. And Spann was the latter? Yes. He did receive, if I recall correctly, he did receive a disciplinary placement as well. But that was, I believe it was pretty short. I would have to refer back to his disciplinary action report. All right. So the logic of their argument would extend to anyone who is reclassified in that way, it sounds like. I believe the logic of their argument would extend to anybody who is placed in what they consider to be atypical hardships, which would be anyone placed in administrative segregation. Wow. Do you have anything you want to say on retaliation and brief rebuttal? Just that I think we outlined our argument from Hartsfield that it would apply to the cases here where a hearing was held on the three different conduct violations. Yes, but that wouldn't apply, would it, to the other retaliatory acts like cell searches and so forth? No, it would not. Your Honor, I am out of time. But why wouldn't those need to go forward? One of the reasons we didn't argue on those was we didn't believe that the other instances, and this is actually one of the problems we actually have with the trial court's orders, we don't think it went far enough into determining which defendants were entitled to qualified immunity in regards to retaliation. But a lot of them, we did not feel as though there was enough to overcome, if we're ceding to their facts at this stage, some of those may require a further, may require a trial. We did argue those points on our reply brief because they raised those other instances outside the conduct violations in the appellee brief. Oh, you mean, so you think you're appealing only to Hartsfield? Yes. Oh, you're not even challenging the denial of qualified immunities to the other? Our brief limited our challenge to the Hartsfield issues only. I see. Okay. We only addressed the issues that were raised by appellee's brief just so that there was a clear view of what was going on here. I don't know if it made it any clearer, but this is helpful. I think what you're saying is you think that we should reverse as to the conduct violations under Hartsfield, but you're not challenging the part of the district court's order that says the case should proceed on retaliation claims as to these other alleged actions. Yes. If we're ceding to their facts, we just don't have enough. Because you think you have to go, there's a dispute as to what happened and what the motive was and so forth? Even if we cede all their facts to them, they've alleged enough to go forward. Okay. If there are no further questions, I thank you all for your time and I hope that you will. All right. Thank you for your argument. Thank you to both counsel. The case is submitted and the court will file a decision in due course. Counselor.